UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| WALTER PEGUES, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 13-CV-3200 |
| SHON ORRILL, et al., | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff, proceeding pro se and detained in the Rushville Treatment and Detention Center, pursues a First Amendment claim for retaliation and an equal protection claim based on alleged race discrimination. (8/19/13 Order.)

The case is now at the summary judgment stage. After reviewing the parties' submissions, the Court concludes that summary judgment is warranted for Defendants. The alleged retaliatory and discriminatory acts were simply not objectively serious enough to be actionable under the United States Constitution.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

## FACTS

The Court notes that Defendant Orrill denies all of Plaintiff's accusations, (Orrill Aff., d/e 46-1), but the Court must accept Plaintiff's version at the summary judgment stage, as to incidents of which Plaintiff has personal knowledge.

Plaintiff alleges in his Complaint that he has been subjected to continuing harassment and retaliation for his grievances and complaints. Specifically, Plaintiff filed two grievances in February, 2010, and one grievance in August, 2010, about unsanitary conditions in the kitchen. Defendant Orrill was, according to Plaintiff, routinely assigned to supervise the kitchen area.

Plaintiff contends that, on October 7, 2010, Defendant Orrill made a "Nazi-style" salute in front of Plaintiff and said, "Sieg Heil." (Complaint, paras. 9-12; Pl.'s Dep. p. 14.) Plaintiff filed a grievance about the incident and was interviewed by Defendant Clayton, but no action was taken. (Pl.'s Dep. p. 16.)

On October 14, 2010, when Plaintiff stooped over to pick his eyeglasses off the floor, Defendant Orrill "stomped" his "military-style" boot near Plaintiff's hand, without touching Plaintiff's hand or eyeglasses. (Pl.'s Complaint, para. 17.).

Sometime in late October or early November, 2010, Defendant Orrill, according to Plaintiff, called Plaintiff a nigger and made

racially degrading comments about Plaintiff's mother. (Pl.'s Complaint para. 25; Pl.'s Dep. 63-64, 66-67.)[1]

In July of 2011, Plaintiff filed a lawsuit in the Central District of Illinois, claiming a constitutionally inadequate diet. <u>Pegues, et al., v. Dredge, et al.</u>, 11-CV-3189 (C.D. Ill.).

Plaintiff contends that, on or around October 26, 2011, Defendant Orrill came up to Plaintiff and said, "What's happening nigger?" Plaintiff got angry and then refused Orrill's order for Plaintiff to go to his room. Another officer came, and Plaintiff then went to his room. According to Plaintiff, Orrill wrote Plaintiff a false disciplinary report regarding this incident in order to cover up that Orrill had provoked Plaintiff. (Pl.'s Dep. p. 68.) Plaintiff received a verbal reprimand. <u>Id.</u> On or about the morning of November 24, 2011, Defendant Orrill pounded on Plaintiff's door several times while Plaintiff was sleeping. (Pl.'s Dep. pp. 64-65; Pl.'s Complaint, para. 31.)

About two months later, in February of 2012, Plaintiff was in the process of getting into a van to be transported to Cook County. According to Plaintiff, Defendant Orrill grabbed Plaintiff by the arm.

---

[1] Plaintiff stated in his deposition that the correct year was 2010, not 2011.

Plaintiff protested and asked for someone else to help Plaintiff get in the van besides Orrill.  The officer in charge directed Orrill to step out of the van, but instead Orrill poked Plaintiff in the chest with his finger and told Plaintiff that if he did not like it, that Orrill would put his "fist up" Plaintiff's ass.  (Pl.'s Dep. p. 70; Pl.'s Complaint, para. 39.)  A second order was given to Orrill to step out of the van, and Orrill complied.  (Pl.'s Dep. p. 71.)

About a year later, on February 11, 2013, Defendant Orrill purportedly made a comment about Plaintiff's rear-end while gesturing sexually.  (Pl.'s Dep. pp. 77-78; Pl.'s Complaint, para. 40.)  Four months later, in June, 2013, Officer Mankey and Defendant Orrill came into the day room and said something to the effect of, "If anyone has a problem with us, they should speak up if they are a man." (Complaint, para. 41; Pl.'s Dep. p. 79).  According to Plaintiff, in August, 2013, Orrill told Plaintiff that "if it was left up to him he would shoot me in my black ass with his Remington 1100." (Pl.'s Dep. 32.)

Plaintiff filed grievances and wrote letters to persons inside and outside the facility about all these purported incidents, but no action was taken.  According to Plaintiff, Defendant Clayton told

Plaintiff to stop filing complaints and that Plaintiff's complaints would not be investigated and would go nowhere.

Plaintiff admits that Defendant Orrill has never physically harmed Plaintiff or even touched Plaintiff other than the contact with Plaintiff while Plaintiff was being put into the transport van in February, 2012. (Pl.'s Dep. pp. 30, 83.)

At the time of Plaintiff's deposition in February, 2014, Plaintiff had not had problems with Orrill in the preceding couple of months, and Orrill had been working in the unit once or twice per week. (Pl.'s Dep. pp. 30-31.)

## ANALYSIS

A prima facie First Amendment retaliation claim requires: (1) protected First Amendment activity; (2) a sufficiently adverse action motivated, at least in part, by the protected First Amendment activity. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012).

Plaintiff's main theory is that Defendant Orrill was motived by Plaintiff's grievances about the kitchen and Plaintiff's lawsuit about the food. The Court sees no connection on this record. Orrill was not named in any of the kitchen grievances or the lawsuit about the

food, and the purported retaliatory events are not close in time to the kitchen grievances and the other lawsuit.

However, Plaintiff's complaints about Defendant Orrill's purported misconduct were also protected First Amendment activities, and those activities could have motivated Defendant Orrill, at least in part, looking at the record in the light most favorable to Plaintiff.

Plaintiff's evidence still falls short, though, because Defendant Orrill's actions were not sufficiently adverse to support a constitutional retaliation claim. The adverse actions must have been concrete and serious enough to deter a person of "ordinary firmness" from exercising a First Amendment right in the future. Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011).

Even considering all the purported adverse events as a whole, a person of "ordinary firmness" would not have been deterred from exercising First Amendment rights. The bulk of Orrill's misconduct (which Orrill categorically denies) were sporadic threats, derogatory remarks, and sophomoric behavior—about 10 instances spread widely over a span of nearly four years. This is not enough to support a retaliation claim. *See* Antoine v. Uchtman, 2008 WL

1875948 *2 (7th Cir. 2008)(not published in Federal Reporter)(threats and racist statements did not state retaliation claim).  Defendant Orrill did purportedly write Plaintiff a false disciplinary report, but Plaintiff received only a verbal reprimand, which, like a verbal threat, is not adverse enough to support a retaliation claim.

In sum, Plaintiff was not deterred by any of these incidents from continuing to inform others about Orrill's purported misconduct, nor would any person of ordinary firmness be deterred.  *See, e.g.,* Turley v. Rednour, 555 Fed.Appx. 606 (7th Cir. 2014)(unpublished)(agreeing with Magistrate that "slamming a door loudly would not deter a person of ordinary firmness from using the grievance system. . . . Turley himself proved that point by continuing to submit grievances after the day Lindenberg slammed the gate).[2]

Further, Plaintiff's equal protection claim rests solely on Defendant Orrill's alleged racial slurs, which alone are not actionable under the Constitution. Dobbey v. Illinois Department of Corrections, 574 F.3d 443, 445-446 (7th Cir. 2009)(guard's hanging

---

[2] The Court agrees with Defendants that claims based on the 2010 adverse events are barred by the two-year statute of limitations, but the 2010 incidents are relevant to background and might also be relevant to motive.

of noose in front of black prisoners did not state a claim); <u>DeWalt v. Carter</u> 224 F.3d 607, 612 (7th Cir. 2000)("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.")

Plaintiff seeks to hold the other Defendants—Hougas, Simpson, Clayton, and Hankins—liable for failing to take corrective action after Plaintiff informed them of Orrill's alleged misconduct. Yet, as discussed above, Orrill's alleged misconduct did not arise to a constitutional violation. Additionally, Defendant Simpson cannot be liable for purportedly failing to process Plaintiff's grievances because Plaintiff has no constitutional right to a grievance procedure. <u>Antonelli v. Sheahan,</u> 81 F.3d 1422, 1430 (7th Cir. 1996). Similarly, the failure by Defendants Clayton, Hankins, or Hougas to investigate Plaintiff's complaints and refusal to take action against Defendant Orrill are not constitutional violations. <u>Burks v. Raemisch</u>, 555 F.3d 592, 595 (7th Cir. 2009)(grievance examiner's rejection of complaint as untimely without investigation was not deliberate indifference); <u>George v. Smith</u>, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an

administrative complaint does not cause or contribute to the violation."); <u>Soderbeck v. Burnett County</u>, 752 F.2d 285, 293 (7th Cir. 1985)("Failure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior . . . .").

**IT IS ORDERED:**

**1.** Defendants' motion for summary judgment is granted (d/e 44). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c).

**ENTER: March 5, 2015**

**FOR THE COURT:**

s/Sue E. Myerscough
                        SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE